1
2
3
4
5
6
7
8

9          UNITED STATES DISTRICT COURT

10         NORTHERN DISTRICT OF CALIFORNIA

11         SAN JOSE DIVISION

12   VICTOR MATURE DAVIS,                )   Case No. 5:13-cv-05155-PSG
                                         )
13                        Plaintiff,     )   **ORDER DENYING PLAINTIFF'S**
           v.                            )   **MOTION FOR SUMMARY**
14                                       )   **JUDGMENT OR REMAND AND**
     CAROLYN COLVIN, Acting Commissioner, )  **GRANTING DEFENDANT'S**
15   Social Security Administration,     )   **MOTION FOR SUMMARY**
                                         )   **JUDGMENT**
16                        Defendant.     )
                                         )   **(Re: Docket Nos. 15, 19)**
17   _____)

18         Plaintiff Victor Mature Davis appeals the decision by Carolyn Colvin, Acting

19   Commissioner of Social Security, denying him Social Security benefits.[1]  Davis moves for

20   summary judgment or remand.[2]  The Commissioner opposes the motion and cross-moves for

21   summary judgment.[3]  The matter was submitted without oral argument pursuant to Civ. L.R. 16-5.

22

23   _____
     [1] The challenged decision was rendered by Administrative Law Judge Christopher Inama on
24   August 2, 2012. The ALJ's decision became final on September 4, 2013, when the Appeals
     Council of the Social Security Administration denied Davis's request for administrative review of
25   the decision.

26   [2] *See* Docket No. 15 at 1.

27   [3] *See* Docket No. 19 at 1.

28                                            1
     Case No. 5:13-cv-05155-PSG
     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
     AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  Having reviewed the papers and considered the arguments of counsel, the court DENIES Davis'

2  motion for summary judgment or remand and GRANTS the Commissioner's cross-motion for

3  summary judgment.

4  ## I.   BACKGROUND[4]

5  Davis was born April 19, 1957.[5]  He has a high school education[6] and has worked as a

6  roofer, laborer, driver, street maintainer and warehouse assistant.[7]  In June 2008, Davis strained his

7  right arm, lower back and knees while lifting a box at work.[8]  In July and August 2008, he

8  underwent testing and physical therapy, which showed mostly normal results with the exception of

9  tenderness of the back and knees.[9]  At that time, his treating physician, Dr. Abeles, limited him to

10  light work, including no lifting, pushing or pulling greater than 20 pounds and no repetitive

11  bending, twisting or stooping.[10]

12  In January and May 2009, physical examinations conducted in connection with Davis'

13  worker's compensation claim revealed no obvious back problems aside from a decrease in range of

14  motion to 70 percent of normal.[11]  He had full range of motion of both shoulders and both knees

15

16

17

18  ───────────────

[4] All facts for this section are taken from the decision by the ALJ and the accompanying

19  administrative record.

20  [5] *See* AR at 97.

21  [6] *See id.* at 56.

22  [7] *See id.* at 181.

23  [8] *See id.* at 254.

24  [9] *See id.* at 270.

25  [10] *See id.* at 403.

26  [11] *See id.* at 401.

27

28  Case No. 5:13-cv-05155-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    but pain in the right shoulder and weakness with external rotation.[12]   In January 2009 Abeles

2    relaxed Davis' work restrictions to allow him to lift, push and pull up to 40 pounds.[13]

3            In September 2009, MRIs revealed no acute lower back problems but showed labial and

4    rotator cuff tears in Davis' right shoulder.[14]   Abeles further relaxed Davis' work restrictions to no

5    lifting, pushing or pulling greater than 50 pounds.[15]   Abeles also authorized right shoulder surgery,

6    which was denied by Davis' workman's compensation program in April 2010.[16]   Abeles again

7    recommended shoulder surgery, noting that Davis had failed all conservative treatment options.[17]

8    In September 2010, Davis elected not to further pursue the shoulder surgery and remained limited

9    to no lifting, pushing, or pulling greater than 50 pounds.[18]

10           Then, in June 2010, Abeles completed a physical capacities statement in connection with

11   Davis' disability insurance application in which he noted severe physical limitations.  Abeles stated

12   that Davis could stand for only five minutes at a time due to knee pain, sit upright for only ten

13   minutes at a time due to back pain, rarely lift less than ten pounds, work for less than two hours of

14   an eight hour workday, miss more than four days of work per month and require more than the

15   usual three workday breaks.[19]   Abeles also stated that Davis suffered from pain severe enough to

16

17

18   _____

19   [12] See id.

20   [13] See id. at 403.

21   [14] See id. at 405–410.

22   [15] See id. at 353.

23   [16] See id.

24   [17] See id. at 323.

25   [18] See id. at 309.

26   [19] See id. at 451–457.

27                                                        3

28   Case No. 5:13-cv-05155-PSG
     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
     AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    interfere with his work capacity for two-thirds of an eight-hour workday.[20]  The doctor also limited

2    Davis' pushing, pulling, handling and fingering ability.[21]

3          Davis first applied for Title II disability insurance benefits on June 1, 2011,[22] claiming a

4    period of disability from an alleged onset date of December 31, 2008[23] through a "date last

5    insured" for Title II disability benefits[24] of June 30, 2010.[25]  Davis alleges that his work-related

6    injuries, along with tinnitus and auditory hallucinations, limited his ability to work from 2009–

7    2010.[26]  In June 2011, the state agency reviewing physician, Dr. Jaituni, reviewed the relevant

8    medical evidence and opined that Davis could lift and carry from 25 to 50 pounds, stand, sit and

9    walk six of eight hours in the workday, was limited in reaching overhead with his right arm and

10   also limited in crawling, crouching and climbing.[27]  Davis' claim was first denied on August 11,

11   2011 and again upon reconsideration on November 8, 2011.[28]  Davis then requested and was

12   granted a hearing before an ALJ.[29]

_____

[20] *See id.*

[21] *See id.*  The doctor did not state a reason for the difference in limitations between this report and his prior assessments.

[22] *See id.* at 20.

[23] The alleged onset date was later amended to January 7, 2009.  *See AR* at 55.

[24] The period after June 2010 is not at issue in this appeal, as Davis has been found medically disabled and receives Title XVI disability benefits.  Davis instead claims disability benefits under Title II, which requires him to show disability prior to the date he was last insured for disability insurance benefits under Title II.

[25] *See AR* at 20.

[26] *See id.* at 24.

[27] *See id.* at 420–24.

[28] *See id.* at 24.

[29] *See id.*

4

Case No. 5:13-cv-05155-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**A.      Hearing**

The hearing took place on July 25, 2012.[30]  Davis appeared with his counsel and testified about his past work experiences, the circumstances of his injuries and the difficulties they create in his daily life.[31]  He described chronic and acute knee, back and shoulder pain[32] that prevented him from sleeping or working, as well as a constant ringing in his ears.[33]  He also testified that he could walk less than one block, lift less than five pounds and that he needed assistance to perform some routine tasks, such as chores.[34]

Vocational Expert Ronald Morrell testified that Davis' previous work primarily required medium to very heavy physical demands.[35]  He stated that Davis could have found light employment under the limitations set out in the treatment reports from 2008–2010, but that no jobs were available if Davis was subject to the more restrictive limitations of Abeles' June 2010 physical capacities statement.[36]

In addition to the live testimony, Davis offered several pieces of written evidence at the hearing.  First, he introduced a July 24, 2012 letter from his friend, Winfred Williams, stating that Davis suffered from constant pain in his shoulder, back and knees.[37]  The letter also noted that Davis was unable to sit or stand for long due to his pain and that he complained of ringing in his

---

[30] *See id.* at 51.

[31] *See id.* at 58–60.

[32] *See id.* at 60.

[33] *See id.* at 63–66.

[34] *See id.* at 61–63, 76–78.

[35] *See id.* at 82.

[36] *See id.* at 83–87.

[37] *See id.* at 239.

5

Case No. 5:13-cv-05155-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  ears.[38]  Williams also pointed out that she occasionally drove Davis from Palo Alto to San Pablo or

2  Richmond.[39]

3          Second, Davis offered another letter from his acquaintance, Devorah Ginden, describing

4  him as in constant pain from his work injury.[40]  That letter was written on the day of the hearing.[41]

5  Finally, Davis introduced physical therapy records from Abeles dated between April 27, 2010 and

6  June 2, 2010.[42]  These records documented treatments for Davis' knees, back, and shoulder

7  injuries.[43]  At the hearing, the ALJ indicated that he would accept these written exhibits into

8  evidence, but the latter two pieces never made it in.[44]  The ALJ took the case under submission.

9  **B.      ALJ's Findings**

10          The ALJ issued his decision on August 2, 2012.  At the first step of the disability analysis,

11  the ALJ found that Davis had not been engaged in substantial gainful employment from the alleged

12  onset date through the date last insured.[45]  At step two, he found that Davis' right shoulder injury,

13  with partial tears of tendons with tendinosis, qualified as severe impairment per 20 C.F.R. §

14  404.1520(c).[46]  The ALJ further found that Davis' claimed back conditions were not severe and

15

16  _____

    [38] *See id.*

17  [39] *See id.*

18  [40] *See* Docket No. 15 Exhibit B.

19  [41] *See id.*

20  [42] *See* Docket No. 15 Exhibit A.

21  [43] *See* Docket No. 15 at 3.

22
    [44] *See* AR at 54.  The ALJ stated "the two documents [the Ginden letter and the physical therapy
23  records] that Counsel brought with her, I will order those admitted into evidence and the staff will
    assign the next exhibit numbers in order in whatever appropriate sections."  These two documents
24  are absent from the administrative record.

25  [45] *See id.* at 22.

26  [46] *See id.*

27
                                                      6
28  Case No. 5:13-cv-05155-PSG
    ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
    AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

that no medical evidence in the record supported Davis' assertion that he heard voices.[47]   At step

three, the ALJ found Davis' combined impairments did not meet or medically equal any of the

listed impairments.[48]   At step four, he found that, through the date last insured, Davis had the

residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the

following limitations:  occasional overhead reaching with the left extremity; climbing ramps and

stairs no more than occasionally; crawling no more than occasionally; not climbing ladders, ropes

and scaffolds and not performing jobs requiring fine hearing capability or frequent verbal and

telephone communications.[49]

        In making his residual functional capacity determination, the ALJ largely discounted the

restrictions of Abeles' 2010 statement, noting that the severe limitations contained in the report

were inconsistent with objective medical evidence contained in Abeles' worker's compensation

treatment records.[50]   Based on these contradictions, the ALJ accorded little weight to the opinion of

Abeles and instead relied primarily upon the worker's compensation records.[51]   The ALJ also

considered the opinion of Jaituni, the evaluating agency physician, who concluded that Davis could

perform medium-level work.[52]

        The ALJ also found Davis' testimony at the hearing only partially credible.[53]   Specifically,

he noted that Davis complained of pain but that the objective medical records showed no acute

findings.[54]   The ALJ also pointed out that during his testimony, Davis claimed pain at eight or nine

---

[47] *See id.*

[48] *See id.* at 23.

[49] *See id.*

[50] *See* AR at 322–410.

[51] *See id.*

[52] *See id.* at 25–26.

[53] *See id.* at 26.

[54] *See id.*

Case No. 5:13-cv-05155-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  on a ten-point scale, yet made it through the hearing without wailing or grimacing.[55]  Similarly, the

2  ALJ noted that Davis claimed that his pain made it impossible for him to sit still for more than five

3  to ten minutes, yet he was able to sit through an hour-long hearing without any notable

4  discomfort.[56]  For these reasons, the ALJ credited Davis' testimony regarding the existence of pain,

5  but discredited it with respect to the severity of the pain.[57]

6       The ALJ likewise found the Williams letter only partially credible on the basis that the

7  subjective observations of a layperson could not outweigh countervailing medical evidence,[58] that

8  Williams' statements could not be objectively verified and that Williams' reports regarding Davis'

9  inability to sit or stand for long periods of time were inconsistent with her reports that he could sit

10  in her car for an hour or more.[59]

11       Finally, at step five, the ALJ determined that Davis was unable to perform any past relevant

12  work through the date last insured.[60]  However, because he determined from the vocational expert's

13  testimony that jobs existed in the national economy that Davis could have performed through the

14  date last insured, the ALJ determined that Davis did not qualify for disability benefits.[61]

15  **C.     Request for Appeals Council Hearing**

16       Following the ALJ's finding of no disability, Davis requested a hearing before the Social

17  Security Appeals Council.[62]  Davis submitted an additional letter from Abeles to the Appeals

18  [55] *See id.*

19  [56] *See id.*

20  [57] *See id.*

21  [58] *See Molina v. Astrue*, 674 F.3d 1104, at 1111 (9th Cir. 2012) (stating that ALJ may discount
22  testimony from non-medical sources if the ALJ gives reasons germane to each witness for doing
23  so).

23  [59] *See* AR at 239.

24  [60] *See id.* at 27.

25  [61] *See id.*

26  [62] *See id.* at 15.

27  Case No. 5:13-cv-05155-PSG
28  ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   Council.  The letter, dated October 2, 2012, provided a diagnosis of Davis' shoulder, back and knee

2   problems and stated Abeles' belief that Davis was fully disabled.[63]  The cover page of the letter

3   bears the inscription "6/17/2008 – 10/2/2012."[64]  The Appeals Council rejected this letter because

4   it was written after the date last insured of June 30, 2010.[65]  The Appeals Council also declined to

5   reverse the ALJ's decision, and this request for review followed.[66]

## II.   LEGAL STANDARDS

### A.   Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's

decision denying Davis benefits.  The Commissioner's decision (here the underlying decision of

the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon

the application of improper legal standards.[67]  In this context, the term "substantial evidence"

means "more than a scintilla but less than a preponderance – it is such relevant evidence a

reasonable mind might accept as adequate to support the conclusion."[68]  When determining

whether substantial evidence exists to support the administrative record as a whole, the court must

consider adverse as well as supporting evidence.[69]  Where evidence exists to support more than one

rational interpretation, the court must defer to the decision of the ALJ.[70]  "If additional proceedings

---

[63] *See* Docket. No. 15 Exhibit C at 2–4.

[64] *See id.* at 1.

[65] *See* AR at 2.

[66] *See id.* at 1–6.

[67] *See Moncada v. Chater,* 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992).

[68] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1257.

[69] *See Drouin,* 966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989).

[70] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1258.

9

Case No. 5:13-cv-05155-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    can remedy defects in the original administrative proceedings, a social security case should be

2    remanded."[71]

3    **B.      Standard for Determining Disability**

4            Disability claims are evaluated using a five-step, sequential evaluation process. In the first

5    step, the Commissioner must determine whether the claimant currently is engaged in substantial

6    gainful activity; if so, the claimant is not disabled and the claim is denied.[72] If the claimant is not

7    currently engaged in substantial gainful activity, the second step requires the Commissioner to

8    determine whether the claimant has a "severe" impairment or combination of impairments that

9    significantly limits the claimant's ability to do basic work activities; if not, a finding of "not

10   disabled" is made and the claim is denied.[73]  If the claimant has a "severe" impairment or

11   combination of impairments, the third step requires the Commissioner to determine whether the

12   impairment or combination of impairments meets or equals an impairment in the Listing; if so,

13   disability is conclusively presumed and benefits are awarded.[74]  If the claimant's impairment or

14   combination of impairments does not meet or equal an impairment in the Listing, the fourth step

15   requires the Commissioner to determine whether the  claimant has sufficient "residual functional

16   capacity"[75] to perform his or her past work; if so, the claimant is not disabled and the claim is

17   denied.[76]  The claimant has the burden of proving that he or she is unable to perform past relevant

18   work.[77]  If the claimant meets this burden, a prima facie case of disability is established. The

---

19   [71] *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

20   [72] *See id.*

21   [73] *Id.*

22   [74] *See id.*

23   [75] A claimant's RFC is what he or she can still do despite existing exertional and nonexertional
     limitations. *See Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

24

25   [76] *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

26   [77] *See id.*

27

28
     Case No. 5:13-cv-05155-PSG
     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
     AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

1    Commissioner then bears the burden of establishing that the claimant can perform other substantial

2    gainful work;[78] the determination of this issue comprises the fifth and final step in the sequential

3    analysis.

4                                    III.    DISCUSSION

5            Davis argues that the ALJ erred in his ultimate finding that Davis was not "disabled" as

6    defined by the Social Security Act, 42 U.S.C. § 401 *et seq*, and thus was ineligible for disability

7    insurance benefits.  He raises five specific challenges to the ALJ's decision: (1) the ALJ erred in

8    rejecting Abeles' opinion; (2) the ALJ erred in rejecting Davis' testimony without a proper

9    credibility finding; (3) the ALJ erred in discounting the Williams letter; (4) the ALJ erred in failing

10   to include timely submitted evidence in the record and (5) the ALJ erred in failing to properly

11   question the vocational expert.[79]  In addition, Davis argues that the Social Security Appeals

12   Council erred in rejecting Abeles' October 2012 letter.[80]

13           The Commissioner counters that the ALJ's decision was based on substantial evidence and

14   is free from harmful legal error.[81]

15           The court will address each challenge in turn.  As described in greater detail below, the

16   Commissioner has the better of each point.

17       **A.  The ALJ's Rejection of Abeles' Opinion Was Appropriate**

18           Davis claims that the ALJ erred in discounting the opinion of Abeles – a treating physician

19   – because he (1) failed to address several limitations in Abeles' statement on how Davis' pain

20

21   _____

22   [78] There are two ways for the Commissioner to meet the burden of showing that there is work in
     significant numbers in the national economy that claimant can do: (1) by the testimony of a
23   vocational expert or (2) by reference to the Medical-Vocational Guidelines. *See Tackett v. Apfel,*
     180 F.3d 1094, 1099 (9th Cir. 1999).

24   [79] *See* Docket No. 15 at 2.

25   [80] *See id.*

26   [81] *See* Docket No. 19 at 6.

27                                        11

28   Case No. 5:13-cv-05155-PSG
     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
     AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    would prevent him from working,[82] (2) did not fully address the limitations proposed by Abeles

2    regarding handling, reaching, and fingering[83] and (3) gave improper weight to "objective" medical

3    evidence in discrediting Abeles' opinion.[84]

4         An ALJ may only discount the opinion of a treating physician if he can provide clear and

5    convincing reasons for the rejection.[85]  If the treating physician's opinion is contradicted by

6    another doctor, the ALJ may discount the treating physician's opinion based upon specific and

7    legitimate reasons supported by substantial evidence in the record.[86]  In doing so, "[t]he ALJ must

8    do more than offer his own conclusions.  He must set forth his own interpretations and explain why

9    they, rather than the doctors', are correct."[87]  The ALJ may also discount statements by a physician

10   that are unsupported by objective medical evidence.[88]

11        Here, although the ALJ did not articulate each piece of Abeles' opinion that he discredited,

12   he did provide clear and convincing reasons for his conclusion that the whole of Abeles' physical

13   capacities statement was unpersuasive:  "throughout the record, Abeles concludes that the claimant

14   can perform modified work with minimal restrictions . . . but concludes in his physical capacities

15   statement that the claimant can perform little-to-no work at all."[89]  This is far more than a mere

16   conclusory statement that the treating physician was wrong.  It is a demonstration of a fundamental

17   internal inconsistency in the physician's assessment.  The ALJ also set forth his own interpretation

_____

18   [82] *See* Docket No. 15 at 11.

19   [83] *See id.* at 12.

20   [84] *See id.* at 13.

21   [85] *See Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

22   [86] *See id.*

23   [87] *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

24   [88] *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("an ALJ need not accept a
     treating physician's opinion that is conclusory and brief and unsupported by clinical findings").

25

26   [89] *See* AR at 26.

27                                                    12

28   Case No. 5:13-cv-05155-PSG
     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
     AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    of the medical evidence:  the objective treatment records, as supported by the opinion of the agency

2    evaluating physician, found no acute medical problems that would limit Davis from performing

3    light work during the period in question.[90]  The ALJ's interpretation of this medical evidence was

4    thus rationally drawn from objective data in the record, and this court declines to overturn it on

5    review.[91]

6        **B.  The ALJ's Finding Davis' Testimony Not Credible Was Appropriate**

7            Davis next argues that the ALJ erred in discounting his testimony of chronic, acute pain

8    without making a proper credibility finding.[92]  In deciding whether to accept a claimant's

9    subjective testimony about pain and other symptoms, the ALJ must engage in a two-step analysis.[93]

10   The claimant must first produce objective evidence of an underlying impairment that could

11   reasonably be expected to produce the pain or other symptoms alleged.[94]  With such evidence in

12   place, the ALJ may only reject claimant's testimony by making specific findings giving clear and

13   convincing reasons for doing so.[95]  These findings must be properly supported by the record and

14   sufficiently specific to demonstrate that the ALJ did not arbitrarily discredit a claimant's subjective

15   testimony.[96]  If the ALJ's findings are supported by substantial evidence, then the court may not

16   engage in second-guessing as to his credibility findings.[97]

17

18   _____

     [90] *See id.*

19   [91] *See Moncada*, 60 F.3d at 523.

20

21   [92] *See id.* at 15.

22   [93] *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

23   [94] *See id.*

24   [95] *See id.* at 1284.

25   [96] *See Thomas v. Barnhart*, 278 F.3d 957, 958–959 (9th Cir. 2002).

26   [97] *See id.* at 959.  Although evidence of a claimant's activities may support an interpretation more
     favorable to the claimant, the ALJ's decision must be upheld where the evidence is subject to more
27   than one rational interpretation.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  An

                                                    13
28   Case No. 5:13-cv-05155-PSG
     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
     AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

    In this case, the ALJ's credibility findings rationally support the conclusion that Davis' subjective allegations of severe pain were only partially credible. He specifically noted that the medical record did not indicate acute, persistent pain and that Davis exhibited an apparent lack of physical discomfort except for one vague statement in an hour-long hearing.[98] These are sufficiently specific, substantial reasons for rejecting Davis' testimony, such that it is clear that he was not arbitrarily rejecting Davis' subjective claims. The court thus declines to second-guess the ALJ's credibility determination.

8

### C. The ALJ's Credibility Determination on the Williams Letter Was Appropriate

9

10

11

12

    Davis next argues that the ALJ erred in discounting the Williams letter because it was not consistent with the medical evidence or objectively verifiable.[99] The ALJ is permitted to determine the credibility of witnesses.[100] "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."[101]

13

14

15

    The ALJ properly considered Williams' testimony and gave clear reasons for why he found it less than credible: it conflicted with the objective medical records and could not be verified with any reasonable degree of certainty.[102] He did not wholly discount this statement; he merely gave it

16

17

18

ALJ may also use ordinary techniques of credibility evaluation, including observations of a claimant's demeanor at a hearing. *See Thomas*, 278 F.3d at 960.

19

[98] *See* AR at 64.

20

[99] *See* Docket No. 15 at 17.

21

[100] *See Molina*, 674 F.3d at 1121–1122.

22

23

24

25

[101] *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). However, "if an ALJ has provided well-supported grounds for rejecting testimony regarding specified limitations, [the court] cannot ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not expressly discredit each witness who described similar limitations." *See Molina*, 674 F.3d at 1121. Similarly, if lay witness testimony describes the same limitations as the claimant's already-rejected testimony, the ALJ's rejection of the witness testimony without comment is harmless error. *See Shuey v. Astrue*, 480 Fed. App'x. 439, 441 (9th Cir. 2012).

26

[102] *See* AR at 26.

27

28

14

Case No. 5:13-cv-05155-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1   less weight than the other evidence available in the record.[103]   Consequently, the ALJ did not err in

2   discounting the Williams letter.

### D. The ALJ's Exclusion of the Ginden Letter and Therapy Records Was Harmless

3

4          Both parties agree that the ALJ's failure to add the Ginden letter and the 2010 physical

5   therapy reports to the administrative record was an error.[104]   However, this error was harmless and

6   thus does not warrant remand.[105]

7          Under Ninth Circuit law, "a district court's erroneous exclusion of evidence does not

8   warrant reversal unless the error 'more probably than not tainted the verdict,'"[106] and this standard

9   also applies to review of administrative decisions.[107]

### 1. Omission of the Ginden Letter Was Harmless Error

10

11          The Ginden letter stated limitations similar to the Williams letter, noting that Davis suffers

12   from chronic shoulder, back, and knee pain.[108]

13          The ALJ provided well-supported grounds for discrediting the Williams letter in light of the

14   available objective medical evidence.  Because the Ginden letter recites the same limitations as the

15   Williams letter, the exclusion of the Ginden letter from the record more probably than not did not

16   taint the ALJ's decision, and "we cannot ignore the ALJ's reasoning and reverse the agency merely

17   because the ALJ did not expressly discredit each witness who described the same limitations."[109]

---

18   [103] *See id.*

19   [104] *See* Docket No. 15 at 2; Docket No. 19 at 8, 13.

20   [105] *See Shinseki v. Saunders*, 556 U.S. 396, 409 (2009).

21   [106] *Molina*, 674 F.3d 1119 (quoting *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1009 (9th Cir.
22   2007)), *aff'd* 553 U.S. 591 (2008).

23   [107] *See Molina*, 674 F.3d at 1120–21.

24   [108] *See* Docket No. 15 Exhibit B.

25   [109] *Molina*, 674 F.3d at 1121; *see also Shuey v. Astrue*, 480 Fed. App'x 439, 441 (9th Cir. 2012)
26   (holding that ALJ's failure to consider lay witness statement was harmless error because ALJ had
     already discounted a statement reciting similar limitations).

27

                                                    15

28   Case No. 5:13-cv-05155-PSG
     ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
     AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

**2. Omission of the Physical Therapy Records Was Harmless Error**

Davis claims that the excluded physical therapy reports from Abeles' clinic demonstrate that he had ongoing problems with his knees, back and right shoulder, and that examination of those records would have caused the ALJ to have given greater credibility to Abeles' physical capacities statement and thus a different ruling.[110]  The court again looks to the record as a whole and asks whether the error more probably than not tainted the decision.  The excluded physical therapy records document Davis' subjective complaints of pain, an almost full range of motion in the back and knees and a restricted range of motion in the right shoulder with strength assessed at four out of five.[111]  They are largely consistent with the objective medical reports considered by the ALJ from June 2008 to October 2010, and as such they would not add anything new to the record.[112]  Instead, they are consistent with the ALJ's finding, from the available objective medical evidence, that Davis was capable of light work with restrictions on overhead reaching with the right arm.  Because these records are in accord with the ALJ's finding, they more probably than not would not have affected the ALJ's ultimate determination.  The omission of this evidence from the record is therefore harmless error.

**E. The ALJ's Hypothetical Question to the Vocational Expert Was Appropriate**

Davis contends that the ALJ erred because (1) the hypothetical that he posed to the vocational expert did not encompass all functional limitations supported by the evidence and (2) the ALJ did not ask the vocational expert whether there was a conflict between his testimony and the Dictionary of Occupational Titles as required by SSR 00-4p.[113]

As discussed, the ALJ properly determined Davis' limitations.  The hypothetical thus reflected the appropriate limitations and was free from error.  And the first question that the ALJ asked the vocational expert was "Mr. Morrell, will your testimony be consistent with the

---

[110] *See* Docket No. 15 at 7.

[111] *See* Docket No. 15 Ex. C.

[112] *See* AR at 24–26.

Case No. 5:13-cv-05155-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1   Dictionary of Occupational Titles, unless you tell us otherwise?" to which the vocational expert

2   responded in the affirmative.[114]   As such, Davis' argument on this point is unsupported by the

3   record.

4   **F.  The Appeals Council Appropriately Rejected the October 2012 Abeles Letter**

5   Finally, Davis argues that the Appeals Council erred in rejecting Abeles' October 2012

6   letter and claims that it addressed a period of time prior to the date last insured.[115]   However, this

7   characterization does not appear anywhere in the letter, nor does it contain any statement indicating

8   that Abeles intended to correct or otherwise reframe his conclusions regarding the 2009 MRI

9   results.  Consequently, the Appeals Council's interpretation of the letter as addressing the time

10  period after the last insured date was grounded in rational analysis of the letter's content.  The court

11  declines to reverse that finding merely because Davis has introduced a competing interpretation of

12  that content.[116]

13  **IV. CONCLUSION**

14  Davis' motion for summary judgment or remand is DENIED and the Commissioner's

15  cross-motion for summary judgment is GRANTED. The Clerk shall close the file.

16

17  **IT IS SO ORDERED.**

18  Dated: July 22, 2014

    PAUL S. GREWAL
19  United States Magistrate Judge

20

21

22

---

23  [113] *See* Docket No. 15 at 18.

24  [114] *See* AR at 80–81.

25  [115] *See* Docket No. 15 at 9.

26  [116] *See Moncada,* 60 F.3d at 523 (upholding agency decisions where the evidence is subject to more than one rational interpretation).

27                                                17

28  Case No. 5:13-cv-05155-PSG
    ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND
    AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT